(No. 25406.—
THE PEOPLE *ex rel.* Sisto Guidotti, Appellant, *vs.* WILLIAM C. BELL, Sheriff, Appellee.

*Opinion filed December 15, 1939—Rehearing denied Feb. 13, 1940.*

B. JAY KNIGHT, J. E. GOEMBEL, and FREDERICK H. HAYE, for appellant.

JOHN E. CASSIDY, Attorney General, ROBERT E. NASH, State's Attorney, JAMES B. ABBEY, and A. B. DENNIS, (A. B. LOUISON, and MAX A. WESTON, of counsel,) for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

By means of a statutory writ of *habeas corpus* (Ill. Rev. Stat. 1937, chap. 60, par. 1, *et seq.*) the appellant, Sisto Guidotti, questions the legality of his detention under a rendition warrant issued by the Governor of Illinois, pursuant to a requisition from the Governor of California. In the circuit court he was remanded to custody and from that judgment he appeals.

In response to the writ, the sheriff of Winnebago county submitted a copy of the rendition warrant issued by the Governor of Illinois, and of the requisition issued by the Governor of California with its supporting papers. These include a copy of the criminal complaint filed in California, the warrant of arrest issued thereon, the affidavit of the chief of police of San Diego, the affidavit of the complaining witness and the application for a requisition made to the Governor of California by the district attorney of San Diego county. These were the bases for the issuance of the rendition warrant by the Governor of Illinois.

The complaint attached to the requisition charges H. E. Desmond, John Doe Lamar and John Doe with a swindling operation whereby the complaining witness was mulcted of $15,000, which, it is certified, constitutes the crime of grand theft under the law of California. The appellant, Sisto Guidotti, is identified by a photograph as the person complaining witness knew by the name of John Doe Lamar.

He is identified in the requisition and in the Governor's rendition warrant as Sisto Guidotti, *alias* John Doe Lamar.

The appellant argues that there are two reasons why he should be discharged from custody,—*i.e.,* first, that he is not a fugitive from justice—that he was not in California at the time of the commission of the alleged crimes—and, second, that he is not the person named in the complaint filed in the superior court of San Diego. The second of these points requires no consideration because the trial court saw the defendant in the court room and saw the affidavit of complaining witness which identified his photograph, and there is no evidence of any kind to controvert its finding on that point. We will therefore direct our attention to the record concerning the question of whether the appellant is a fugitive from justice.

As to this matter appellant offers the evidence of five witnesses. One of them, who was an old friend of appellant's, testified that appellant was staying at the witness' apartment in Chicago during the first few days in March, 1939, (at about the time this crime was supposed to have been committed,) and in this there was corroborating evidence from two other witnesses who were supposed to have been staying at the same apartment at the same time. The appellant's brother in Rockford, and an automobile salesman of the same city, testified that appellant was in Rockford from the fifth to the eleventh days of March, 1939. The testimony of each of these witnesses was somewhat impaired on cross-examination and its weakness was apparent to the trial court without cross-examination. The People introduced some evidence tending further to impair some of this testimony, but in the view which we take of the matter, it is unnecessary to review it in detail. The appellant takes the position that inasmuch as the testimony of these witnesses as to an alibi was not directly contradicted nor directly impeached, it became the duty of the trial court to discharge the petitioner, and, in this connec-

tion, they urge that the affidavits from California were not admissible in evidence and should not have been considered. On this point the appellant is definitely in error because we have several times held to the contrary. The requisition papers, with their accompanying affidavits, together with the Governor's rendition warrant, are all to be considered as evidence and make a *prima facie* case against the petitioner, and upon him lies the burden of overcoming it. *Munsey* v. *Clough,* 196 U. S. 364; *People* v. *Jeremiah,* 364 Ill. 274; *Lacondra* v. *Hermann,* 343 id. 608; *People* v. *O'Brien, post,* p. 640.

We find, then, that the question presented to the trial court for decision was whether the *prima facie* case made by the requisition and warrant was overcome by the evidence offered by the appellant. The right to make such a showing is established by authorities hereinafter to be noted, but it is apparent from the briefs that the appellant is under a serious misapprehension as to the kind, character and degree of proof required to make it effective for his discharge.

A proceeding by *habeas corpus* under the Fugitives From Justice act, above cited, is a civil suit instituted by the petitioner for the protection of his own civil rights and not one by the Government to punish him for a crime. (*People* v. *Murray,* 357 Ill. 326; *Ex parte Tom Tong,* 108 U. S. 556, 27 Law ed. 458, 25 Sup. Ct. 871.) The return of a fugitive from one State to another is a Federal and not a State matter. It is governed by the constitution of the United States and the act of Congress passed pursuant thereto, and in these proceedings this court is bound by the decisions of the Supreme Court of the United States. U. S. Const. art. 4, sec. 2; U. S. Rev. Stat. 5278; *People* v. *Baldwin,* 341 Ill. 604; *People* v. *Murray, supra.*

The case before us concerns only the degree of proof required from one about to be surrendered on a rendition warrant when he questions the executive action of the Gov-

ernor in ordering him delivered up, pursuant to the provisions of the constitution of the United States. On this point the Supreme Court of the United States has been very specific. One of the leading cases is *Munsey* v. *Clough,* 196 U. S. 364, 25 Sup. Ct. 282. In that case it is said: "When it is conceded, or when it is so conclusively proved that no question can be made, that the person was not within the demanding State when the crime is said to have been committed, and his arrest is sought on the ground only of a constructive presence at that time, in the demanding State, then the court will discharge the defendant."

In the later case of *Illinois* v. *Pease,* 207 U. S. 100, 28 Sup. Ct. 58, there is set forth a succinct group of rules controlling many of the principles of interstate extradition which need not be repeated here. The closing paragraph of that opinion applies to the case at bar and we quote it: "When a person is held in custody as a fugitive from justice under an extradition warrant in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the constitution and laws of the United States. We may repeat the thought expressed in *Appleyard's Case,* above cited, that a faithful, vigorous enforcement of the constitutional and statutory provisions relating to fugitives from justice is vital to the harmony and welfare of the States, and that 'while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State.' "

In this proceeding the judicial department of government is not trying a law suit nor determining the guilt or

innocence of a defendant. It is, within that limited power conceded to the States by the decisions of the United States Supreme Court, taking care, "within the limits of the law, that the rights of its people are protected against illegal action." At the same time we are taking equal care, as enjoined by the United States Supreme Court, that the provisions of the constitution shall not so narrowly be interpreted as to enable the offenders against the laws of a State to find a permanent asylum in Illinois. It is not for the judicial branch of government to interfere with a considered order of the executive, unless that order be so palpably and conclusively shown to be wrong as to warrant an inference of fraud or inadvertence.

In the case before us it is insisted that because no witness appeared to directly controvert the alibi evidence offered that evidence must be taken as true and the petitioner discharged. This is not the law and it cannot be without entirely upsetting the constitutional provision. The affidavit of the complaining witness, submitted to the Governor, was by him considered sufficient for his executive act in executing a rendition warrant. That affidavit had a photograph of the appellant attached to it, and the appellant was before the court together with his photograph. The most that could be said of the alibi evidence that was offered would be that it might raise a doubt, but it fell far short of that clear and convincing proof required by the decisions of the United States Supreme Court. The appellant sat in the court room but failed to take advantage of his opportunity to testify in his own behalf, and, since this is a civil suit, his silence could not but be considered by the trial court. It is obvious that if he had cared to subject himself to the hazards of cross-examination or to the possible penalties for perjury, he could largely have benefited his own case by a full and frank disclosure of his whereabouts at the times in question. If he was not in California, contrary to what was stated in the affidavit of

578

the complaining witness, he could have given testimony very valuable to the trial court in determining the question of fact with which it was confronted. Instead of doing this, he chose rather to remain silent and to rely upon technical objections to the evidence presented, and what he conceived to be the weakness of the opposition. He chose not to rely upon any candor or strength of his own position and, in so doing, made a case under which he is not susceptible to discharge by the rules laid down by the Supreme Court of the United States.

We find no error in the judgment of the circuit court, and it is affirmed.

*Judgment affirmed.*