(No. 33352.—

THE PEOPLE ex rel. Charles Price Webb, Appellant, vs. JOHN E. BABB, Sheriff, Appellee.

*Opinion filed December 20, 1954—Rehearing denied Feb. 15, 1955.*

HUNTER, GARNETT & ROBINSON, of Chicago, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, GEORGE W. SCHWANER, JR., JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR MANNING, KENNETH E. WILSON, and BERNARD DEENY, of counsel,) for appellee.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

Charles Price Webb, herein called petitioner, is appealing from a judgment entered by the criminal court of Cook County quashing a writ of *habeas corpus* and remanding petitioner into custody of the sheriff of Cook County by virtue of a Governor's warrant issued pursuant to a request for extradition by the Governor of Indiana.

The appeal presents the issues of whether the requisition order and supporting documents were executed in compliance with the Federal extradition statute (18 U.S.C.A., chap. 209, sec. 3182,) and whether the petitioner could be deemed a fugitive from justice of the demanding State under the terms of that statute.

From the record it appears that on October 10, 1953, between 7:30 and 8:00 A.M., a pawn broker's establishment, located at Indiana Avenue in Indianapolis, Indiana, was robbed by two men, who escaped with proceeds allegedly valued at $15,000. Subsequently, two of the State's witnesses identified the petitioner from pictures as one of the men participating in the robbery, and on October 28, 1953, petitioner was arrested in Chicago.

The Governor of Indiana sent a requisition for extradition dated November 2, 1953, to the Governor of Illinois, which recited that by the attached papers, which are certified as authentic, Charles Price Webb is charged by an affidavit pending in the criminal court of the county of Marion with the commission of robbery while armed, that Webb has fled from Indiana and taken refuge in Illinois, and that pursuant to the constitution and laws of the United States requisition is made for the delivery of Webb to an agent of the Indianapolis police department.

The supporting documents included first an application for requisition by the prosecuting attorney, subscribed and sworn before a justice of peace, Ernest Lane, reciting that Webb is charged by an affidavit pending in the criminal court of Marion County with the crime of robbery while armed, that he has fled from the State of Indiana and into the State of Illinois, where he is in jail, and that sufficient evidence can be produced in the prosecution of Webb to secure his conviction; and nominating a police agent from Indiana to receive the fugitive.

The supporting documents also included a certified copy of the affidavit, signed by Garland Jones and subscribed before Ernest Lane, the justice of peace, on October 28, 1953, which was filed in the criminal court of Marion County, charging petitioner with the aforementioned crime. There is also a certification by the clerk of Marion County, executed on November 2, 1953, that Ernest Lane was on that date a duly commissioned justice of peace, a list of

the State's witnesses in the cause signed by the clerk of the court and prosecuting attorney, and a certification by the judge of the criminal court of Marion County that the clerk was the proper officer to have custody of such papers and to attest thereto, and that his signature was genuine.

Pursuant to this requisition by the Governor Indiana and the supporting documents, the Governor of Illinois executed a warrant for petitioner on December 6, 1953.

Petitioner, however, had been taken into custody on November 19, 1953, and a writ of *habeas corpus* was issued the same day. The hearing on the writ was continued until December 22, 1953, and again until January 26, 1954.

At that hearing, after the requisition documents were introduced, petitioner offered testimony of witnesses to establish that he was in Chicago at the time of the commission of the alleged offense. Petitioner's employer testified that when he arrived at his barber shop at about 9:30 A.M. on the morning of October 10, 1953, Charles Webb was already there, and that Webb left the shop at about 10:00 A.M. to go to a funeral. Webb returned to work at about 2:30 or 3:00 P.M. and remained there until 9:30 P.M. A witness, through whom petitioner was buying a suit, since his own credit was inadequate, stated that petitioner made a payment at his place of business at about 10 minutes to 10 o'clock that morning. Another witness on petitioner's behalf, a chef on the Pennsylvania Railroad, testified that when he went to deliver a cake at the home of petitioner's sister on October 10, 1953, between 10:00 and 11:00 A.M., he saw petitioner there. Petitioner's sister stated that he came to her home around 10:00 A.M., and he drove her to a funeral service at which she was to play the organ. The undertaker stated that he saw petitioner in the car as he and his sister drove up. Petitioner's mother and brother both testified that Charles Webb was at home at 7:00 A.M. and until he left for work on the morning of October 10, 1953.

In rebuttal, the State offered the testimony of the proprietor whose store was robbed, who described the robbery and identified the petitioner in court as the person who committed the crime. The State also offered the testimony of a 16-year-old employee in the store at the time of the robbery, who identified petitioner's photograph, but failed to clearly identify him in court.

The trial judge held that in an extradition proceeding the judge in the asylum State cannot properly discharge the petitioner under a writ of *habeas corpus* where there is merely controverted alibi evidence that petitioner was not in the demanding State at the time the crime was committed. He held that it must be conclusively shown beyond any possibility of doubt that the petitioner could not have been in the demanding State. Hence, the writ was quashed and the petitioner was remanded to the custody of the sheriff.

In determining the propriety of that judgment we shall consider first the sufficiency of the requisition papers, questioned for the first time on this appeal.

Interstate extradition is based upon the provisions of section 2 of article IV of the constitution of the United States, providing that "A person charged in any State with Treason, Felony or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." Pursuant to this provision, Congress passed an act providing in substance that whenever the executive authority of any State demands any person, as a fugitive from justice, of the executive authority of any State to which such person has fled, and produces a copy of an indictment found or *an affidavit made before a magistrate uf any State,* charging the person demanded with having committed a crime, certified as authentic by the Governor of the State, it shall be the duty of the executive

authority of the State to which such person has fled to cause him to be arrested and delivered to an agent of the demanding State

Under this statute it has been held essential that the requisition of the Governor of the demanding State shall be based upon either a copy of an indictment or an affidavit made before a magistrate and certified as authentic by the Governor of the demanding State. (*Lacondra* v. *Hermann,* 343 Ill. 608.) From our factual resumé it appears that the requisition of the Governor of Indiana certified as authentic the attached supporting documents, which included a certified copy of an affidavit and warrant made by Garland Jones on October 28, 1953, before Ernest Lane, a justice of the peace, and also a certification by the county clerk on November 2, 1953, that Ernest Lane was a duly commissioned and qualified justice of the peace of Marion County on that date.

Petitioner argues, however, that since the affidavit was signed before the justice of the peace on October 28, and the certification dated November 2 stated that he held office on that date, there is an insufficient showing of his official status on the date the affidavit was executed; hence, there was no proper compliance with the statute.

That rationale is without a logical basis. The fact that in addition to the affidavit there was also included among the supporting documents a certification that the justice of the peace held such office on November 2 does not in any way reflect upon, or preclude, his having had proper authority on October 28 when the oaths were administered. The justice of the peace signed the affidavit in his official capacity, and there is no evidence or implication that he did not hold office on that date; hence, there can be no failure to comply with the statutory requirements.

In support of the contention that the requisition documents were insufficient, petitioner cites *People ex rel. Poncher* v. *Toman,* 371 Ill. 275, where the court held

insufficient a rendition warrant issued solely upon a complaint and warrant, without any showing that the requisition was based on an affidavit before a magistrate. That case, however, is in no way determinative of the issue herein, where the supporting documents in the record do include an affidavit made before a magistrate who signed in his official capacity. Nor is *United States ex rel. McCline* v. *Meyering,* 75 Fed 2d 716, cited by petitioner, determinative, since the Governor's warrant therein showed on its face that there was only a certification of a warrant, and not of an affidavit made before a magistrate as in the instant case.

Petitioner's further contention that he should be discharged on the ground that he was not a fugitive from justice from the demanding State of Indiana, since he was in Chicago at the time the crime was committed, presents the issue of the degree of proof required in a *habeas corpus* hearing to avert an extradition order by the executive authority. This issue has been considered in numerous cases. *People ex rel. Guidotti* v. *Bell,* 372 Ill. 572; *People ex rel. Eveland* v. *Harrell,* 404 Ill. 81; *People ex rel. McCline* v. *Meyering,* 356 Ill. 210.

The Illinois courts have followed the precedent established by the Supreme Court of the United States in *Munsey* v. *Clough,* 196 U.S. 364, where the court promulgated the rule that only when it is so conclusively proved that no question can be made that the person was not within the demanding State when the crime is said to have been committed can he be discharged. Thus the court may not weigh the evidence, or discharge the petitioner when the evidence on the fact of his presence in or absence from the demanding State is merely contradictory. *People ex rel. McCline* v. *Meyering,* 356 Ill. 210; *People ex rel. Eveland,* v. *Harrell,* 404 Ill. 81.

In *People ex rel. Guidotti* v. *Bell,* where the petitioner offered the testimony of five witnesses to establish his alibi

that he was not in the demanding State of California when the crime was committed and therefore could not be deemed a fugitive from justice, and that evidence was controverted only by a photograph attached to the affidavit of the complaining witness, the court held, nevertheless, that the most that could be said of the alibi evidence was that it might raise a doubt, but still fell far short of that clear and convincing proof required by the decisions of the Supreme Court of the United States.

In the instant case petitioner also offered alibi evidence by the testimony of eight witnesses, including his mother, brother, and sister, who stated that they saw him in Chicago at various times during the day on which the crime was committed in Indiana. However, that evidence was controverted by the testimony of the complaining witness, who identified petitioner in court as the man who perpetrated the crime. If the alibi evidence were deemed insufficient to warrant a discharge in the *Bell case,* clearly the evidence herein, where rebuttal testimony was presented, was even less conclusive.

Moreover, petitioner's case was weakened by his failure to testify on his own behalf in this civil proceeding even though he was present in the courtroom. Such conduct was sharply criticized in the *Bell case,* where the court stated: "It is obvious that if he had cared to subject himself to the hazards of cross-examination or to the possible penalties for perjury, he could largely have benefited his own case by a full and frank disclosure of his whereabouts at the times in question."

From the status of the record herein, the whereabouts of petitioner on October 10, 1953, is uncertain, depending upon which witnesses are believed. Inasmuch as it is not incumbent upon this court in this *habeas corpus* proceeding to try petitioner's alibi or determine his guilt or innocence but merely to ascertain whether the executive order for his extradition was so palpably wrong as to warrant an

inference of fraud or inadvertence (*People ex rel. Guidotti v. Bell; People ex rel. Eveland v. Harrell,*) we are obliged to hold that no such showing was made, since the evidence does not conclusively establish that he was outside the demanding State when the crime was committed. Hence, the trial court did not err in quashing the writ of *habeas corpus* and in remanding petitioner to the custody of the sheriff, and the judgment of that court is affirmed.

*Judgment affirmed.*