THE PEOPLE *ex rel.* MIKE EMERSON, a/k/a MIKE WOTRING, Relator-Appellant, *v.* GERALD R. PRATT, Sheriff, Winnebago County, Respondent-Appellee.

(No. 74-315;

Second District—November 12, 1974.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin (Bruce C. Erickson, Assistant Public Defender, of counsel), for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Robert G. Gemingnani and Dan Doyle, Assistant State's Attorneys, and James W. Jerz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The relator appeals from an order of the circuit court of Winnebago County dismissing his petition for a writ of habeas corpus.

Two issues are raised in this appeal: (1) whether the State presented

sufficient competent evidence to establish a prima facie case that relator is a fugitive from justice and (2) whether the incarceration of the defendant for 31 days while no charges were pending against him was so violative of due process as to deprive the circuit court of jurisdiction at the time of its denial of the habeas corpus petition.

The relator, a former resident of Michigan, was arrested on a Federal fugitive warrant in Illinois. He was placed in the Winnebago County jail and was arraigned before a United States magistrate on June 10, 1974, on the Federal charge of flight. This charge was dismissed on June 18, 1974; however, the relator was retained in custody in the Winnebago County jail. On July 15, 1974, the extradition warrant of the Governor of the State of Illinois together with the proper warrant of the Governor of Michigan, application for extradition writ, affidavits and complaint of the Michigan authorities charging relator with attempted murder and armed robbery, were filed in the Winnebago County court and on July 18, 1974, an information was filed in the circuit court of Winnebago County charging that relator was a fugitive from justice as of June 10, 1974 in violation of section 13 of the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1973, ch. 60, par. 30). A warrant was issued for his arrest. The same day the relator appeared in court and challenged the legality of his confinement. He was allowed until July 31 to file a petition for a writ of habeas corpus at which time he filed an amended petition for writ of habeas corpus.

At the hearing on the writ on September 13, 1974, the relator testified he was in the State of Florida on the day of the alleged crime, having arrived in Florida around the end of August, and remained there during the entire month of September, 1973. He could not remember the exact day of his arrival and while he maintained he stayed at a particular motel while there and worked at a certain job he did not offer any proof of any kind to establish these facts, except his own testimony.

The victim of the attempted murder and robbery was present at the hearing in the Winnebago circuit court and testified to the best of her ability. However, she had been so badly injured when she was shot in the head by the robber as to largely deprive her of her memory and render some of her testimony vague and unresponsive in certain details. Nevertheless, she did positively identify the relator as the man who shot her and she persisted in such identification under cross-examination. In addition, on the question of the relator's whereabouts during the month of September, 1973, the chief of police of the victim's home town was allowed to testify that the owner of the bar where the robbery and shooting took place had told him that the relator and a companion were

in the bar on September 4, 1973, the day before the shooting, and that relator and his companion were talking about "having to get some money to go to Arizona."

The relator contends that the testimony of the victim, Mrs. Minton, was inadmissible because she was incompetent and that the testimony of the police chief was inadmissible as being hearsay.

■■■ While it is true that where a question arises as to the competency of a witness in a regular trial it is incumbent on the trial court to conduct a preliminary examination to determine the witness' competency (*People v. Crews* (1967), 38 Ill.2d 331), we do not believe this rule is applicable here. This was an extradition hearing and we are not dealing with a question of final judgment but only with the establishment of a prima facie case for remanding the relator to the demanding state for a trial. The essential fact to determine from the witness' testimony was whether the relator was in fact present in Michigan on the day of the crime. This was the central question at issue in this hearing. (*People ex rel. Borelli v. Sain* (1959), 16 Ill.2d 321.) On this point Mrs. Minton's testimony was clear and unequivocal. The fact that the witness' memory was impaired as to the events or conditions prior to the shooting does not impeach her competency to testify as to the person who actually did the shooting. The judge at the conclusion of her testimony, in denying the motion to strike it, said:

> "Well, obviously the lady has sustained injuries which apparently have had some effect on her, on portions of her recollection, but I am satisfied that she is able to testify and did so as she recalls it in this case, so your motion is denied."

The trial judge, obviously, did not find her to be incompetent on the main issue involved, which was the identity of her assailant and we are not inclined to hold that he abused his discretion in admitting this testimony. The cases cited by the relator as to the necessity for a preliminary examination as to competency (*People v. Crews* and *People v. Tappin* (1963), 28 Ill.2d 95) were both child-witness cases and in both cases the child was permitted to testify and there is no indication that a preliminary hearing was requested by the defendant or conducted by the court. The question of the competency of a witness depends almost entirely on the good judgment of the trial court since the trial court has the opportunity which the appellate courts lack, to observe the manner, demeanor and expression of the witness. Where the court is satisfied as to the competency of the witness he should not be overruled, except in a case of obvious abuse of discretion. (*People v. Davis* (1957), 10 Ill.2d 430; *People v. Westley* (1972), 5 Ill.App.3d 668.) In this case neither

the character of the witness' testimony nor the nature of the proceeding required such an auxiliary hearing to be held.

■■■ The relator also maintains that the testimony of the police chief, Melvin Tanner, should have been stricken as being hearsay. While we are inclined to agree that the testimony would be inadmissible as hearsay under the rules of evidence governing trials, we believe more latitude is allowable in an extradition hearing where only a prima facie case need be made out and the burden of proof is on the relator to establish that he was not in the demanding state on the day in question rather than the burden being on the State to show he was. In *People ex rel. Blassick v. Callahan* (1972), 50 Ill.2d 330, 335-336, the court on this point cited *People ex rel. Webb v. Babb* (1955), 5 Ill.2d 35, 41:

> "The Illinois courts have followed the precedent established by the Supreme Court of the United States in *Munsey v. Clough*, 196 U.S. 364, where the court promulgated the rule that only when it is so conclusively proved that no question can be made that the person was not within the demanding State when the crime is said to have been committed can he be discharged. Thus the court may not weigh the evidence, or discharge the petitioner when the evidence on the fact of his presence in or absence from the demanding State is merely contradictory. [Citations.]".

■■ Here the State established a prima facie case on the basis of the extradition warrant and supporting papers (which were not claimed to contain any irregularity) and the testimony of the victim, Lillian Minton, that the relator was in the state of Michigan on the date of the crime. The testimony of the police chief was only cumulative at best—it reinforced but was not necessary to establish the State's prima facie case.

The second contention of the relator is that the trial court lost its jurisdiction to hear the habeas corpus petition because the defendant was incarcerated for 31 days—from June 18, 1974 to July 18, 1974—during which no charges were pending against him. Since the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1973, ch. 60, par. 32) provides that a fugitive may be committed to the county jail while extradition papers are being processed "for such a time not exceeding 30 days and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the Governor on a requisition of the Executive Authority of the state having jurisdiction of the offense, unless the accused give bail as provided in the next section, or until he shall be legally discharged," the relator contends his confinement became illegal on the 31st day of his commitment and therefore he was no longer under the jurisdiction of the court on the 31st day after his commitment, the time of the hearing on the habeas corpus petition.

This claim is extremely technical because the violation claimed is so slight—only 1 day beyond the 30 days mentioned in the statute. The fact is that the governor's warrant was filed in the clerk's office on July 15, 1974, which was within the 30 days. In view of the technicalities of the extradition process this is hardly a deprivation of due process. In any event, however, reference to the case of *People ex rel. Gummow v. Larson* (1966), 35 Ill.2d 280, indicates the relator's point is not well taken. The relator there made the same claim after being incarcerated for a much longer period of time beyond the statutory 30 days. The court in dealing with this contention said:

"We believe relator misapprehends the statutory plan. The purpose of these sections of the extradition law is to prevent unreasonably lengthy periods of confinement of fugitives pending consummation of extradition proceedings by the demanding State. (*Cf. Lott v. Heyd*, (5th cir.), 315 F.2d 350; *Bolton v. Timmerman*, 233 S.C. 429, 105 S.E.2d 518. There is, however, no indication of any legislative intent to restrict the period within which the Governor of Illinois may issue his rendition warrant to the period within which the court which issues the fugitive warrant may commit the accused or require him to give bond.

A quite similar situation was before the court in *Lombardo v. Tozer*, 264 S.W.2d 376 (Mo. St. Louis Ct. App.) where the court held the legality or illegality of the fugitive warrant proceedings was moot since that warrant became *functus officio* upon issuance and service of the rendition warrant. (See also *Lott v. Heyd*, (5th cir.) 315 F.2d 350.) We agree, and since no question is raised on this appeal as to the validity of relator's arrest pursuant to the Governor's warrant, the judgment of the Lake County circuit court is affirmed." 35 Ill.2d 280, 282.

■■ In the light of the above language it appears there is no basis for the relator's claim that the circuit court lost jurisdiction of the person of the relator so as to deprive the court of its power to make a ruling on the habeas corpus petition. Here the governor's warrant was filed before the habeas corpus petition was filed and the court was not at liberty to disregard it.

There was nothing to prevent the relator's immediate rearrest if he was discharged from custody without a hearing—or if he is now discharged from custody. Double jeopardy would not be involved. (*May v. Sexton* (1966), 35 Ill.2d 585.) Therefore from a practical standpoint it is obvious that the relator's contention on this question is without merit.

■■ The relator having failed to overcome the State's prima facie case for the issuance of a writ of extradition, the judgment of the circuit court

of Winnebago County denying the writ of habeas corpus is hereby affirmed.

Affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.