(No. 35016.—

THE PEOPLE *ex rel.* Eugene C. James, Appellant, *v.* STAN-LEY A. LYNCH, Sheriff, *et al.,* Appellees.

*Opinion filed March 20, 1959—Rehearing denied May 19, 1959.*

MICHAEL H. BRODKIN, and JASON ERNEST BELLOWS, both of Chicago, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, and WILLIAM L. GUILD, State's Attorney, of Wheaton, (FRED G. LEACH, WILLIAM H. SOUTH, and WILLIAM J. BAUER, of counsel,) for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Eugene C. James, hereinafter referred to as the relator, filed his petition for a writ of *habeas corpus* in the circuit court of DuPage County to test the validity of his extradition to the State of New Jersey. A return to the writ was filed alleging the Governor's warrant, and the petition was allowed to stand as a traverse to the return. A hearing was had upon these pleadings at the conclusion of which the writ was ordered quashed and the relator ordered remanded to the custody of the respondents for delivery to the messenger of the State of New Jersey. The relator seeks a review here of his contentions that he was not in the demanding State on the various dates alleged in the indictment and that he was not the same person named in the various counts of the indictment. Section 10 of the Uniform Criminal Extradition Act authorizes our jurisdiction to consider this appeal. Ill. Rev. Stat. 1957, chap. 60, par. 27.

The indictment charges a conspiracy between Louis B. Saperstein and Eugene C. James, wherein funds of the Laundry Workers International Union were embezzled while James was the acting secretary-treasurer of said union and also-seventh vice-president. There are 24 counts in the indictment, each charging misappropriations of union funds in large amounts, some suggesting, $500,000, $600,000 and $700,000. It was alleged that the acts were committed in the State of New Jersey, beginning on or about March 31, 1950, and continuing to *about* May 6, 1954. The overt acts were alleged in the various counts to have been committed on or about March 31, 1950; August 14, 1950; between February 1, 1951, and March 26, 1954; between October

17, 1952, and January 18, 1954; between September 14, 1951, and August 27, 1953; and between September 26, 1951, and May 6, 1954; September 24, 1952; October 3, 1952; November 7, 1952; December 9, 1952; December 15, 1952; January 27, 1953; March 2, 1953; March 20, 1953; April 10, 1953; April 14, 1953; April 28, 1953; June 10, 1953; July 7, 1953; August 12, 1953; August 31, 1953; September 28, 1953; October 14, 1953; October 15, 1953; November 6, 1953; December 7, 1953; December 30, 1953; January 29, 1954; February 8, 1954, and February 10, 1954.

The relator's direct testimony was brief. He simply stated that he was not in New Jersey on March 31, 1950, or on September 24, 1952 and that he was not the same person as the Eugene C. James named in the indictment.

On cross-examination, relator was questioned about respondent's exhibit 2 which consisted of various papers submitted by the Governor of New Jersey in requesting the warrant from the Governor of Illinois. As a part of this exhibit there was an affidavit of Winfield S. Chasmar to which was attached a photograph of a group of people allegedly attending a wedding reception given for the daughter of Louis B. Saperstein in Newark, New Jersey, in the latter part of December, 1952. Chasmar stated that he was president of the local union No. 284 of the Laundry Workers International Union from 1938 to 1957; that he had known Eugene C. James as an officer of the union for 15 years. Relator admitted knowing him for 20 years. Also a part of exhibit 2 is a photostatic copy of a certificate of marriage of Stanley B. Amsterdam and Judith F. Saperstein, duly certified by the State Registrar, accompanied by a certificate of his authority by the Secretary of State of New Jersey. According to the certificate the marriage was performed on December 27, 1952.

The relator admitted his presence when the group picture was taken but could not remember the date or the

circumstances under which it was taken. He recognized Louis B. Saperstein, his codefendant, also Samuel J. Byers who was also mentioned in the indictment as one of the agents of the involved union. The relator's attitude, when being questioned about his alleged presence in the State of New Jersey during the latter part of December, 1952, is best reflected in the questions and answers on this subject, quoting from the record:

"Q.: I am asking you if you have ever seen the photograph before?

A.: I never saw that picture before.

Q.: Do you appear in that picture?

A.: Sure, that's me right there.

Q.: Do you recall the occasion when the picture was taken, sir?

A.: No, I don't know if I was at the wedding, if that is what you are referring to.

Q.: Do you recall where that picture was taken?

A.: No sir.

Q.: Do you know anyone else in that picture?

A.: I know them all.

Q.: You have no idea when and where this picture was taken?

A.: It could have been taken at 100 different places.

Q.: Well I am asking you whether you know where it was taken.

A.: Definitely not. I don't know exactly where it was taken because the same group of people I have seen at several parties on several different occasions with all over the country. Where that was taken I have no way of knowing anymore than you do.

Q.: Could that picture have been taken at a wedding reception held on the 27th day of December, 1952, at the Essex House in Newark, New Jersey, Mr. James?

A.: I don't know whether it was or not.

Q.: You ought to know whether you were there or not.

A.: I already answered that question.

Q.: You were not in New Jersey on the 27th day of December, 1952, is that correct?

A.: Not to the best of my knowledge."

Significantly, the relator denied his presence in New Jersey on only two dates, namely, March 31, 1950, and May 6, 1954. On the many other relevant dates he would say that he was not there "to the best of my knowledge" or "to the best of my recollection." Attached to the affidavit of Chasmar was a photograph of relator who admitted that it was a true likeness of himself.

The burden of the proof is upon the relator to show that he is not the person named in the indictment or that he was not in the demanding State at the time of the alleged offenses. The Governor's warrant and accompanying papers constituting the requisition of the demanding State makes a *prima facie* case, and affidavits accompanying the requisition are rightly considered by the trial court. (*People ex rel. Guidotti* v. *Bell*, 372 Ill. 572; *People ex rel. Buxton* v. *Jeremiah*, 364 Ill. 274; *People ex rel. Stanton* v. *Meyering*, 345 Ill. 598.) When the crime charged involves continuing acts, such as conspiracy to embezzle, the presence of the defendant in the demanding State need not be on the exact date charged. It is sufficient if he was present on any of the dates alleged in the indictment of the demanding State. (*People ex rel. Moore* v. *Wirz*, 349 Ill. 80; *People ex rel. Mortensen* v. *O'Brien*, 371 Ill. 351.) The relator did not deny that he was secretary-treasurer of the union that allegedly lost large sums of money. Furthermore, it appears that relator recognized the photograph of Saperstein and Byers, both of whom were involved with him in this difficulty, and he admitted that the picture produced by Chasmar was one of himself. Surely under these circumstances it is difficult to believe that relator is any other than the Eugene C. James named in the indictment.

Relator's denial that he was in the demanding State on the date of the offense alleged in the indictment is both incomplete and unconvincing. The trial court correctly determined that the writ issued herein should be quashed and relator remanded to the State of New Jersey. This conclusion cannot be disturbed unless it is contrary to the manifest weight of the evidence. Such is not the case here.

*Judgment affirmed.*