Dennis MADSEN, Plaintiff and Appellant,

v.

Delmar L. "Swede" LARSEN, Salt Lake
County Sheriff, Defendant and
Respondent.

No. 13559.

Supreme Court of Utah.

Oct. 2, 1974.

James F. Housley, Salt Lake City, for plaintiff and appellant.

Vernon B. Romney, Atty. Gen., M. Reid Russell, William W. Barrett, Asst. Attys. Gen., Salt Lake City, for defendant and respondent.

HENRIOD, Justice:

Appeal from a dismissal of Madsen's petition for writ of habeas corpus. Reversed.

Plaintiff was indicted in California, whose Governor asked his extradition. He was picked up and charged as a fugitive from justice. Utah's Governor Rampton held a hearing. Apparently a transcript was prepared which is not in the record here. Also it would appear that by stipulation the transcript was admissible in the instant case,—all pursuant to Title 77–56, Utah Code Annotated 1953.

At the habeas corpus proceeding everyone conceded that the only issue was identification of the plaintiff, where ordinarily the plaintiff has the burden of proof.[1] Under the unusual circumstances of this case, however, where Title 77–56 invites habeas corpus proceedings before extradition is effected, presumptively the state would furnish the transcript supporting its effort to extradite,—which it didn't.

This case has a record so short that it represents a brochure of a brochure. The following colloquy represents the entire record so far as this case is concerned:

Housley (plaintiff's attorney): Your Honor, this is a Habeas Corpus case, and the only issue is Mr. Madsen's identity. The Governor's warrant in support of it referred to a Dennis Madsen with

---

1. Scott v. Beckstead, 13 Utah 2d 428, 375 P.2d 767 (1962).

no middle name, no address, no other means of identification. I made a check and there are at least four other Dennis Madsens in the area, possibly five.

Court: What area, California?

Housley: No, Salt Lake and northern Utah area. One of them is in Orem, one is in Magna, two are in Salt Lake, that area, and our position is, your honor, that the papers and the warrant are insufficient on their face to support the arrest and return of Dennis Madsen.

Bullen (Attorney for State): My understanding was that there was a hearing held before the Governor on the issues.

Housley: That is true.

Bullen: And *apparently* satisfied the Governor. I don't have a trascript at this time.

Court: That is the entire basis for your Writ?

Housley: Yes, sir.

Court: *Well, over your strenuous objection* I will deny the petition for the Writ *and the Governor's warrant will be granted.*

Housley: Your Honor, may I have a stay of ten days in the execution of the warrant so I can perfect my appeal?

Court: Yes.

We think that under the circumstances, the only reasonable and just thing to do under the statute and cases, is to return this case to the trial court for the purpose of conducting an evidentiary hearing,—and can see no good reason otherwise, in good conscience.

A few observations must be made about the dissent in this case. It is bottomed principally on two cases: 1. Moreaux v. Ferrin and 2. Scott v. Beckstead, two of our own Utah cases. Both seem to be inapropos here and not at all dispositive of the instant case.

In Moreaux there was a plenary hearing, with direct and cross examination made available; there were findings and conclusions entered based on the evidence; the evidence adduced at the Governor's hearing was available and introduced. None of these factors was a work product in the instant case. In Moreaux there was a stipulation as to what eventuated at the extradition hearing and it was agreed that Moreaux was *"the person named in the information."* Such fact was not stipulated here, but on the contrary the gravamen of the instant proceeding was proof of identification which was resolved without evidence and only by way of an apodictic gratuity indulged by the trial court over counsel's "strenuous objection,"—about which there is no intimation here.

Scott v. Beckstead equally is inapposite. There was a plenary hearing; the opinion there asked two questions: 1) Whether *the evidence* supported plaintiff's *identity*, and 2) Whether he was a fugitive. Here no such evidence was permitted, and the trial court assumed something (the Governor's infallibility) that to date has not been tested under common ordinary rules of due process. The suggestion that petitioner should have proffered some kind of testimony seems somewhat absurd in the light of the colloquy mentioned above, together with the almost unbelievable statement of counsel for the State that he did not have a transcript of the Governor's proceeding with him at this important hearing involving a man's freedom,—when the State itself, through our statute, provoked this very habeas corpus hearing and, we think, in all good conscience, should have had its evidence at the hearing. Scott v. Beckstead generally states general principles with which the main opinion has no quarrel, but its decision was arrived at after a protracted evidentiary hearing, where all the basics of due process were present, including charge, notice, answer, joinder of issues, direct examination, cross-examination, findings of fact *based on the evidence*, and conclusions, prior to judgment, —most of which were not existent but quite ethereal here. [Emphasis added.]

ELLETT and TUCKETT, JJ., concur.

CALLISTER, Chief Justice (dissenting).

I respectfully dissent. At the hearing on plaintiff's motion, his counsel stated that the only issue was Mr. Madsen's identity. Plaintiff's counsel elaborated by stating that the governor's warrant referred to Dennis Madsen with no middle name, no address, and no other means of identification. Plaintiff's counsel represented that there were four or five other Dennis Madsens in the Salt Lake and northern Utah area. Based on the foregoing, plaintiff's counsel urged that the papers and the warrant were insufficient on their face to support the arrest and return of Dennis Madsen.

Plaintiff's counsel admitted that there had been a hearing before the governor on these issues, although no copy of the transcript of that hearing was available.

The trial court queried whether that was the entire basis for plaintiff's petition for the writ. Plaintiff's counsel responded in the affirmative. The court thereupon denied the petition for the writ of habeas corpus.

The trial court found that the cause of petitioner's restraint was a governor's warrant. The legality of the restraint and the sufficiency of the documents had been adjudicated in a prior proceeding. The trial court further found that the only issue before the court was that of petitioner's identification; that the governor's hearing had been had on this issue; that there was no cause to believe that petitioner was not the person being sought in the governor's warrant. The trial court dismissed plaintiff's motion and concluded his restraint was legal under Chapter 56 of Title 77, U.C.A.1953.

Before the trial court, plaintiff's sole point was the sufficiency of the documents on their face to identify him as the Dennis Madsen within the state of Utah, whom the state of California sought.

Upon receipt of a requisition, the governor of the asylum state must determine as a question of fact, whether the person is a fugitive from justice. The necessary elements to support a determination that a person is a fugitive from justice are: (1) He was in the state where the alleged crime was committed; (2) at the alleged time of the commission thereof; (3) that he left the state and came to the asylum state; and (4) that he is the person sought. Habeas corpus is an appropriate proceeding to determine whether one is a fugitive from justice; a petitioner, seeking to defeat extradition, has the burden of establishing that he is not a fugitive from justice.[1]

The warrant for extradition by the governor of the asylum state supported by duly authenticated extradition papers from the demanding state establishes a prima facie case to support the extradition of the person held.[2] To exonerate plaintiff from the charge of being a fugitive from justice, he must show the contrary by clear and convincing evidence.[3]

In the instant action, plaintiff proffered no proof to controvert the factual determination that he was a fugitive from justice, which as previously mentioned incorporates identity. Upon interrogation by the court, plaintiff's counsel specified that his evidence concerned the adequacy of the description of plaintiff on the governor's warrant. In other words, the warrant was the product of a factual determination that plaintiff was the one sought by the state of California; plaintiff proffered no evidence to controvert that fact. His sole point was

1. Moreaux v. Ferrin, 98 Utah 450, 100 P.2d 560 (1940).

2. Scott v. Beckstead, 13 Utah 2d 428, 375 P.2d 767 (1962); People ex rel. James v. Lynch, 16 Ill.2d 380, 158 N.E.2d 60 (1959), cert. den. 361 U.S. 864, 80 S.Ct. 123, 4 L.Ed. 2d 104; Krutka v. Bryer, 150 Colo. 293, 372 P.2d 83 (1962).

3. Scott v. Beckstead, note 2, supra.

**230**

that the name on the face of the warrant was insufficient, since several others in this geographical area had a similar name. This contention was without merit, and the trial court did not err in dismissing the petition.[4]

CROCKETT, J., concurs in the views expressed in the dissenting opinion of CALLISTER, C. J.

---

4. ". . . In order for the proof to be sufficiently strong to require us to reverse the trial court's decision his defense must be established by such clear and convincing evidence that it would be unreasonable for the trial court to find that he is a fugitive from justice and therefore refuse to give him his release . . ." Scott v. Beckstead, note 2, supra, at page 432 of 13 Utah 2d, 375 P.2d at page 769.