Wachtler, J.
A felony complaint has been filed in California charging Guy Hinton with failing to support his minor children. California has requested that he be extradited. The Governor of this State has honored the request. It is conceded that Hinton is "substantially” charged with having committed a crime in the demanding State (CPL 570.08). But since he was not in California at the time he allegedly committed the crime he may not be extradited unless it is also shown that "the acts for which extradition is sought would be punishable by the laws of this state, if the consequences claimed to have resulted therefrom in the demanding state had taken effect in this state” (CPL 570.16). The primary question on this appeal is whether this latter requirement has been met.
In 1962 the accused left his wife and four minor children in California. His wife Patricia then entered into "a common law situation” with Francis Solomon and adopted the name Patricia Solomon. In 1970 she applied in California for public assistance for the children claiming that she did not receive any support from the accused. In 1971 she signed a misdemeanor complaint charging him with nonsupport. It was later determined that Hinton was residing in New York and in February, 1972 a reciprocal support petition was forwarded to the Family Court in New York. On June 16, 1972 that court ordered that Hinton pay $16 a week for child support, beginning on June 23, 1972.
On October 5, 1972 Patricia Solomon signed a felony com *348 plaint in California charging that Hinton did "willfully, unlawfully and feloniously and without lawful excuse, omit to furnish” support for his minor children in violation of section 270 of the Penal Code of California. The complaint was sworn to before a Judge of the Municipal Court who then issued a warrant for Hinton’s arrest. On November 16, 1972 he was arrested at his home in New York and held pending extradition proceedings.
In January, 1973 Bradford Woodington, an investigator from the District Attorney’s office in Orange County, California, sent an application for requisition to the Governor of California. The application states that Hinton "is properly charged, in due form, in accordance with the laws of this State with the crime of violation of section 270 of the California Penal Code, a felony, committed in the county of Orange” and "That said fugitive from about the fifth day of October, 1972, and prior thereto, while out of the State of California, committed acts intentionally resulting in said crime in said county”. In an affidavit attached to the application, Patricia Solomon recited the history of the case as indicated above and also stated that she had not received any support from the accused since the entry of the New York Family Court order in June, 1972. In another affidavit to the same effect Woodington noted that "this office has received no funds from the defendant”. Both of these affidavits were sworn to before a Judge of the Municipal Court of Orange County.
On January 23, 1973 the Governor of California signed the requisition demanding Hinton’s return to California. On February 1, 1973 the Governor of New York signed a warrant for Hinton’s arrest and surrender to California authorities since he "stands charged in that State with having committed acts in the State of New York intentionally resulting in a crime in the State of California to wit: non-support, which acts would be punishable by the Laws of New York if the consequences resulting therefrom in the State of California had taken effect in New York”.
Hinton then commenced this proceeding by order to show cause to vacate the Governor’s warrant claiming that the documents supporting the warrant did not satisfy the requirements of CPL 570.16.* The Suffolk County Supreme Court *349 treated the motion as an application for a writ of habeas corpus (see CPL 570.24) and vacated the warrant on the ground that the California felony complaint failed to allege that the defendant had committed acts in New York which would result in the commission of a crime in California. The Appellate Division reversed holding that the "affidavits submitted with the California complaint contain sufficient information to satisfy the requirement of CPL 570.08, 570.16” (48 AD2d 932).
On this appeal Hinton claims that the requirements of CPL 570.16 have not been met because (1) the California felony complaint "even if read with the supporting affidavits, does not establish that any acts were committed by defendant-appellant which would be a crime in New York” and (2) the felony complaint "is defective in that it fails to contain the allegation that defendant-appellant committed an act in the State of New York which intentionally resulted in the commission of a crime in the State of California”.
At the outset it is important to note that there is a fundamental distinction between the Governor’s power to extradite fugitives from justice and his power to extradite individuals who were not physically present in the demanding State at the time they allegedly committed the crime.
The Federal Constitution provides for the extradition of fugitives from justice. Section 2 of article IV states: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he has fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.” The procedures to be followed in such cases are for the most part governed by Federal statute (US Code, tit 18, § 3182). The statute however is not "exactly coterminous with the power granted by the Constitution” (Innes v Tobin, 240 US 127, 134) and the States are free to adopt their own procedures in those cases which not covered by Federal law (Innes v Tobin, supra; see, also, People ex rel. Matochik v Baker, 306 NY 32). Once the Federal constitutional and statutory requirements are met the *350 Governor must comply with the demand for extradition even though the acts alleged would not be a crime under the laws of the asylum State (Commonwealth of Kentucky v Dennison, 24 How [65 US] 66; 2 Moore, Extradition and Interstate Rendition, § 522; People ex rel. Lawrence v Brady, 56 NY 182, 188).
At the heart of these provisions is the requirement that the accused shall have fled from justice in the demanding State. This requirement has nothing to do with the defendant’s state of mind at the time he departed. "To be a fugitive from justice” the Supreme Court has noted "it is not necessary that the party charged should have left the State in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a State committed * * * a crime, when he is sought to be subjected to its criminal process to answer for his offence, he has left its jurisdiction and is found within the territory of another” (Roberts v Reilly, 116 US 80, 97). In other words, in determining the defendant’s fugitive status, the only question is whether he was physically present in the demanding State when he allegedly committed the crime. On the other hand, if the defendant committed a crime in the demanding State while not physically present there, the Governor of the State in which he is found is not obliged to surrender him (Hyatt v Corkran, 188 US 691; Matter of Reggel, 114 US 642).
Thus extradition of those who are not fugitives from justice in the constitutional sense still depends upon comity between the States (see 1935 Report of NY Law Rev Comm, pp 101-103, 119, 120; Note, The Detainer: A Problem in Interstate Criminal Administration, 48 Col L Rev 1190, 1196-1197; Commissioner’s Prefatory Note to the Uniform Extradition Act). However until fairly recently the rule adopted in New York and most other States prohibited the Governor from surrendering anyone who was not physically present in the demanding State at the time of the crime (People ex rel. Corkran v Hyatt, 172 NY 176, affd. sub. nom. Hyatt v Corkran, 188 US 691; Keller v Butler, 246 NY 249; People ex rel. Higley v Millspaw, 281 NY 441).
The Uniform Criminal Extradition Act, which has been adopted by nearly all the States, now permits extradition in such cases. Section 6 of the act provides: "The Governor of this state may also surrender, on demand of the Executive *351 Authority of any other state, any person in this state charged in such other state in the manner provided in Section 3 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose Executive Authority is making the demand, and the provisions of this act not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom.”
In 1936 the act was adopted in this State (L 1936, ch 892), but only after section 6 had been significantly modified (see Code Grim Pro, § 834). The report of the Law Revision Commission which recommended passage of the act shows that the changes were made after Governor Lehman had vetoed the previous bill solely because of his objections to the proposed version of section 834 of the Code of Criminal Procedure, which with minor changes adopted section 6 of the act. In his veto message the Governor stated: "I fear that the section is open to the strong possibility of serious misuse and abuse. It might readily curtail freedom of speech and of the press and be the basis of persecution” (1936 Report of NY Law Rev Comm, pp 39-40). The commission noted that in the revised version, which was later enacted as section 834 of the Code of Criminal Procedure (now CPL 370.18) two significant changes were made. The report states: "extradition under this section is not authorized unless the very act with which the person demanded is charged would be punishable in this state if the results complained of by the demanding state had occurred geographically, in this state. Further, in order to prevent use of extradition to acquire jurisdiction of a person for prosecution for an offense for which he could not be' extradited, the governor may, if he deems it necessary, make extradition in such cases conditional upon agreement by the executive authority of the demanding state that no prosecution of the extradited person shall be made except upon the specific charge for which he is extradited. These additions provide careful safeguards against abuse of extradition procedure in this type of case” (op. cit., p 41).
Here the defendant is charged in California with willfully omitting to furnish support to his minor children without lawful excuse. Section 270 of the Penal Code of California states: If a "father of either a legitimate or illegitimate minor child willfully omits without lawful excuse to furnish [support]” he is guilty of a crime punishable by a fine *352 and a maximum term of one-year imprisonment. The defendant does not dispute the fact that he is "substantially” charged with committing a crime in California.
In addition of course it must be shown that he committed an act in California (CPL 570.08) or another State intentionally resulting in a crime in California (CPL 570.16). The affidavits contained in the extradition papers show that the defendant was in New York, not California, at the time he failed to provide support. Furthermore the Governor’s demand alleges that the defendant committed an act in New York intentionally resulting in a crime in California. Nevertheless the defendant claims that the requirement of CPL 570.16 has not been met because the felony complaint does not contain a similar allegation.
CPL 570.08 says that there must be a written demand for extradition "alleging that the accused was present in the demanding state”. CPL 570.16 does not say how the necessary allegation should be made when the defendant was not in the demanding State at the time of the crime, but in our view the same rule should apply. This should not be considered a pleading requirement. If the Governor’s demand and the accompanying affidavits show that the defendant committed an act in New York intentionally resulting in a crime in the demanding State, this particular requirement of CPL 570.16 is satisfied (cf. People ex rel. Higley v Millspaw, 281 NY 441, supra).
The final and decisive question then is whether the act alleged would have been a crime in this State if it had had its effect here. The New York nonsupport statute (Penal Law, § 260.05) is similar to California’s but not identical. It should also be noted that the statute was amended one month before the defendant was charged in California (L 1972, ch 687, § 3, eff Sept. 1, 1972).
Prior to the amendment the statute read as follows (L 1965, ch 1030): "A person is guilty of non-support of a child when, being a parent, guardian or other person legally charged with the care or custody of a child less than sixteen years old, he fails or refuses without lawful excuse to provide support for such child when he is able to do so.” Under this statute it has been noted that "an unemployed parent, lacking other assets, was relieved of his support obligation, without regard to the reason for his unemployment” (see Hechtman, 1972 Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal *353 Law, § 260.05 [1975-1976 Supp]). The 1972 amendment changed this by providing that the parent is liable not only when he is able to provide support but also when he "becomes unable to do so, when, though employable, he voluntarily terminates his employment, voluntarily reduces his earning capacity or fails to diligently seek employment” (L 1972, ch 687, § 3).
Here both statutes were in effect when the defendant allegedly neglected the duty imposed by law because nonsupport is considered a continuing crime (People ex rel. Gottschalk v Brown, 237 NY 483). Thus he could be prosecuted if he violated either, including the current statute which, as indicated, imposes a greater burden upon him.
The defendant argues that he would not have been subject to prosecution in this State because all of his children are now more than 16 years of age. There is no merit to this argument. It is fundamental that when the age of the victim is an element of the crime, it is the age at the time of the crime, and not at the time of trial, which controls.
He also claims that there is nothing in the extradition papers to show that he had the ability to support his children through his financial resources or earning capacity. The Peopie argue that the Family Court order of June 16, 1972 entered in the reciprocal support proceeding established his ability prima facie. We disagree. The order simply directs the defendant to pay $16 a week for child support. That may establish the children’s needs, but it does not state that the defendant has the capacity to make the payments. There is no reference to the defendant’s financial resources, and although the order calls for a finding as to his earning capacity, that portion of the order was left blank and crossed out. The other papers attached to the Governor’s warrant are also silent on this point.
The People of course are not required in an extradition proceeding to establish the defendant’s guilt beyond a reasonable doubt. But when he was not present in the demanding State at the time of the crime, it must be established prima facie that he would have violated the laws of this State if the consequences had been felt here. That is the policy of this State expressed by statute and it means that there must, at least, be some showing of an evidentiary nature establishing every element required under the relevant New York penal statute. On this record there is nothing of an evidentiary *354 nature showing that the defendant had the ability to furnish support out of his financial resources or by means of his earning capacity.
Accordingly, the order of the Appellate Division should be reversed and the judgment of the Supreme Court, Suffolk County, reinstated.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order reversed, without costs, and the judgment of Supreme Court, Suffolk County, reinstated.

 The relevant portion of CPL 570.16 provides: "The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 570.08 with *349 committing an act in this state or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, when the acts for which extradition is sought would be punishable by the laws of this state, if the consequences claimed to have resulted therefrom in the demanding state had taken effect in this state”.