DONALD NEWMAN, Plaintiff-Appellant, *v.* RICHARD J. ELROD, Sheriff of Cook County, Defendant-Appellee.

First District (5th Division)  No. 78-789

Opinion filed May 18, 1979.—Rehearing denied June 21, 1979.

Ellis B. Rosenzweig, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Myra J. Brown, Assistant State's Attorneys, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff, a licensed Illinois attorney, appeals from a judgment of the circuit court denying his petition for a writ of habeas corpus and directing his extradition to New Jersey. It is contended here that (1) the trial court improperly found him to be the party charged by New Jersey authorities; (2) the acts set forth in the New Jersey documents do not constitute a crime in Illinois, thereby precluding extradition under section 6 of the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1977, ch. 60, par. 23) (the Act); and (3) neither the New Jersey documents nor the Illinois Governor's warrant indicate that the acts constituting the offense charged were done with the intent to commit a crime.

Our review of the record reveals that a Donald Newman was charged in New Jersey with several acts of conspiracy to violate that State's laws prohibiting the private placement of children for adoption. (N.J. Stat. Ann. §§2A:98—1, 2A:98—2 (West 1969).) The indictments alleged that Donald Newman on three specified occasions conspired with New Jersey residents, who were unindicted co-conspirators, to obtain a recently born child for them. Arrangements were made by telephone, and the co-conspirators came to Chicago where in each instance they obtained a baby from Donald Newman and paid him several thousand dollars.

Plaintiff filed a verified petition for writ of habeas corpus in which he denied that he was the person sought by New Jersey authorities. At the

hearing on the motion, no testimonial evidence was presented in this regard, but plaintiff did introduce photocopies of pages of a lawyers' directory and Chicago area telephone books, showing that there was another attorney named Donald Newman in the area as well as six Donald Newmans and three D. Newmans.

■■ The extradition documents were the only evidence offered by the State, and it is plaintiff's position that they do not establish him to be the person sought because they merely refer to Donald Newman as the person sought. We note, however, that a rebuttable presumption of identity arises when the name on such papers is the same as the person seeking to avoid extradition. (*In re Extradition of Leonard* (1975), 27 Ill. App. 3d 870, 327 N.E.2d 480. Accord, *Torrey v. Williams* (Me. 1978), 388 A.2d 921; *Meek v. State* (1975), 262 Ind. 618, 321 N.E.2d 205; *State ex rel. Holmes v. Spice* (1975), 68 Wis. 2d 263, 229 N.W.2d 97; *Mora v. Larson* (Utah 1975), 540 P.2d 520; *Hithe v. Nelson* (1970), 172 Colo. 179, 471 P.2d 596.) This presumption would establish a prima facie validity to the issue of identity, and plaintiff would then have to show that he is not the person whose extradition is demanded (*People ex rel. James v. Lynch* (1959), 16 Ill. 2d 380, 158 N.E.2d 60, *cert. denied* (1959), 361 U.S. 864, 4 L. Ed. 2d 104, 80 S. Ct. 123; *Nelson v. People* (1973), 11 Ill. App. 3d 1092, 297 N.E.2d 172) and, as soon as such showing is made, the presumption vanishes entirely (*Osborne v. Osborne* (1927), 325 Ill. 229, 156 N.E. 306).

There is a variance as to the effect ascribed to a rebuttable presumption of identity of names when it is shown that other persons of the same name reside in the area (65 C.J.S. *Names* §15 (1966)); however, we believe that the general considerations adopted in this State regarding rebuttable presumptions are applicable. As stated in *McElroy v. Force* (1967), 38 Ill. 2d 528, 532-33, 232 N.E.2d 708, 710-11:

"A rebuttable presumption, such as exists here, is not evidence in itself, but arises as a rule of law or legal conclusion from facts proved. [Citations.] These presumptions 'do not shift the burden of proof. Their only effect is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail.' [Citations.] Stated differently, the presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of going forward and introducing evidence to meet the presumption. If evidence is introduced which is contrary to the presumption, the presumption will cease to operate. [Citations.] However, where there is an absence of evidence to the contrary, the *prima facie* case created under the presumption will support a

finding. [Citation.]" Accord, *Diederich v. Walters* (1976), 65 Ill. 2d 95, 357 N.E.2d 1128.

In the present case, although the charging documents were the only evidence offered indicating plaintiff to be the individual sought, he does not contest that the identity of names in those documents raised the presumption that he was the person charged. He takes the position, however, that the presumption was met by his contrary evidence. We disagree.

■■ Plaintiff's written denial in the petition for writ of habeas corpus that he was the person named in the extradition proceeding is insufficient to rebut the presumption. (*People ex rel. Biggs v. Nash* (1937), 366 Ill. 186, 8 N.E.2d 359.) While plaintiff did introduce documentary evidence that another Donald Newman was practicing law in the area and that there were six listings of Donald Newman and three of D. Newman in the local telephone directories, we are of the belief that they lend little, if any, support to plaintiff's position that he was not the person sought. Those documents merely demonstrate that other individuals have the same name and, in the absence of any other evidence showing that plaintiff was not the person sought, we conclude that plaintiff's evidence did not contravene the presumption raised by the identity of names that he was the person charged.

Plaintiff contends also that under section 6 of the Uniform Criminal Extradition Act (Act), the offense for which extradition is sought must be a crime in the asylum State. That section provides:

> "The Governor of this State may also surrender, on demand of the Executive Authority of any other state, any person in this State charged in such other state in the manner provided in Section 3 with committing an act in this State, or in a third state, *intentionally resulting in a crime in the state* whose Executive Authority is making the demand." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 60, par. 23.)

We view this section as pertaining to instances where the individual sought was not in the demanding State at the time the offense occurred. It differs from the extradition of a fugitive who is alleged to have committed a crime in the demanding State and then flees. The latter situation is governed by section 3 of the Act. Ill. Rev. Stat. 1977, ch. 60, par. 20.

Plaintiff posits that the aforesaid italicized language of section 6 of the Act should be construed as requiring that the crime charged in the demanding State be a criminal offense in the asylum State. In support of his position, plaintiff relies upon the counterpart statutory provisions of section 6 in New York (N.Y. Crim. Pro. Law §570.16 (McKinney 1971)) and Rhode Island (R.I. Gen. Laws 1956, §12—9—8 (1970)), which

expressly provide that the offense for which extradition is sought must be punishable in those States as a criminal offense. A recitation of the history of the New York statute is contained in *People v. Hinton* (1976), 40 N.Y.2d 345, 386 N.Y.S.2d 703, 353 N.E.2d 617, where the court discussed the legislative development of the New York counterpart of section 6 which had been modified to expressly provide that the offense for which extradition is sought by the demanding State must be an offense in New York. Also, the applicable Rhode Island provision specifically provides that extradition may be granted "when the acts for which extradition is sought would be punishable by the laws of this state, if the consequences claimed to have resulted therefrom in the demanding state had taken effect in this state * * *." R.I. Gen. Laws 1956, §12—9—8 (1970).

■■■ In contrast to the statutory wording contained in the New York and Rhode Island provisions, section 6 of the Illinois Act contains no similar language. We consider section 6 to be plain and unambiguous, and thus it must be given its plain and ordinary meaning. (See *Christian Action Ministry v. Department of Local Governmental Affairs* (1978), 74 Ill. 2d 51, 383 N.E.2d 958.) It is not the function of this court to inject provisions not found in the statute (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 504, 217 N.E.2d 73, *appeal dismissed* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612, overruled on other grounds, *Paepcke v. Public Building Comm.* (1970), 46 Ill. 2d 330, 263 N.E.2d 11), and we are thus led to the conclusion that the section 6 intentional conduct requirement cannot be reasonably interpreted to support plaintiff's argument that the conduct be an offense within the asylum State. Had the legislature intended otherwise, it would have been a simple matter to do so as evidenced by the statutory provisions of New York and Rhode Island.

Moreover, it was held in *People v. Schwartz* (1976), 64 Ill. 2d 275, 356 N.E.2d 8, *cert. denied* (1977), 429 U.S. 1098, 51 L. Ed. 2d 545, 97 S. Ct. 1116, that while an attorney may render legal services to relinquishing or adopting parents, he or she must stop short of serving as an intermediary go-between or placing agent. Therefore, the charge in the indictment that plaintiff conspired with certain New York residents to obtain for them recently born children appears to sufficiently allege the commission of an offense under Illinois law.

■■ We further reject plaintiff's suggestion that the trial court erred in refusing to consider whether plaintiff's conduct was intended to result in a crime elsewhere. Such consideration would be improper under section 3 of the Act (see *Michigan v. Doran* (1978), ___ U.S. ___, 58 L. Ed. 2d 521, 99 S. Ct. 530), and similar arguments have been persuasively rejected in other jurisdictions under provisions comparable to section 6 of the Act (see *McCullough v. Darr* (1976), 219 Kan. 477, 548 P.2d 1245; *Conrad v. McClearn* (1968), 166 Colo. 568, 445 P.2d 222).

Finally, plaintiff urges that the extradition documents introduced in the trial court are improper since neither the Illinois Governor's rendition warrant nor the New Jersey indictment and supporting documents charged that plaintiff *intentionally* committed a conspiratorial act that was a crime in the demanding State, as required by section 6 of the Act. Plaintiff relies on *People ex rel. Frye v. Woods* (1972), 51 Ill. 2d 91, 280 N.E.2d 701, where extradition was sought under section 3 of that Act, which covers situations where the relator is charged with committing a crime in the demanding State and fleeing therefrom. In the consideration of plaintiff's petition for a writ of habeas corpus, it was shown that plaintiff was not in the demanding State when the alleged offenses were committed, and the trial court determined that the matter should be treated under section 6, which provides for extradition of a person not present in the demanding State at the time of the commission of the crime. On review, our supreme court concluded that the indictment from the demanding State "is the indispensable document which justifies the issuance of the rendition warrant" (51 Ill. 2d 91, 95, 280 N.E.2d 701, 704) and, since it alleged plaintiff's presence in the demanding State, it did not support the warrant issued under section 3 of the Act by the Governor of Illinois. *Frye* does not expressly hold, as plaintiff suggests, that the indictment must clearly allege an intent to commit a crime in the demanding State; rather, *Frye* stands for the proposition that extradition proceedings must be formulated under the proper section of the Act and that when an indictment alleges plaintiff's presence in the demanding State, the relator could not be held on a warrant issued under section 3 of the Act unless the underlying papers, the requisition from the demanding State and the indictment, filed in conjunction therewith contained the information necessary to support extradition proceedings under section 6.

We find instructive the reasoning of the New York Court of Appeals in *Hinton*, where this issue was considered. There, the defendant alleged the felony complaint was defective because it did not allege the act was intentionally committed. The court, in noting that the Governor's demand for extradition alleged such intentional conduct, stated:

"If the Governor's demand and the accompanying affidavits show that the defendant committed an act in New York intentionally resulting in a crime in the demanding State, [this is sufficient to sustain the statutory requirement]." 40 N.Y.2d 345, 352, 386 N.Y.S.2d 703, 708, 353 N.E.2d 617, 622.

■■ In the present case, the demand of the Governor of New Jersey stated that plaintiff's conduct intentionally resulted in the commission of a crime. Similarly, the New Jersey indictment alleged that plaintiff had conspired to violate the child adoption laws of that jurisdiction and set forth the overt acts relative to these charges. In New Jersey, it would appear that

the crime of conspiracy is complete once the conspirators have formed the intent to commit a crime and taken a step in its preparation. (*State v. Moretti* (1968), 52 N.J. 182, 244 A.2d 499, *cert. denied* (1968), 393 U.S. 952, 21 L. Ed. 2d 363, 89 S. Ct. 376.) Since the conduct set forth in the indictment requires proof of such intent, we believe that its allegations, in addition to the Governor's demand asserting plaintiff's conduct was intentional, satisfies the requirements of section 6. This holding is in accord with the rule that the sufficiency of the indictment is to be tested in the demanding State, and not in the asylum State. *People ex rel. Halley v. Willis* (1970), 46 Ill. 2d 29, 262 N.E.2d 480.

Similarly, plaintiff's final assertion is that the rendition warrant issued by the Governor of Illinois is defective because it did not allege that plaintiff's conduct was intentional. He cites no authority in support of this position, and we note that the warrant need only "substantially recite the facts necessary to the validity of its issuance." (Ill. Rev. Stat. 1977, ch. 60, par. 24.) For the reasons set forth above, we believe that intentional conduct was sufficiently asserted.

We conclude the circuit court's denial of plaintiff's petition for writ of habeas corpus was proper and, accordingly, its judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.