THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, *v.* FREDERICK LEROY CHEEK, JR., Defendant.—(MICHAEL ASBELL, Relator-Appellee, *v.* THE PEOPLE *ex rel.* STEVE BRIENEN, Sheriff of McLean County, *et al.*, Respondents-Appellants.)

Fourth District   No. 16623

Opinion filed April 24, 1981.

TRAPP, P. J., dissenting.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for appellants.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

The State appeals from the trial court's order discharging the defendant following an extradition hearing upon a petition for a writ of *habeas corpus*. The seminal facts are relatively uncomplicated.

On March 16, 1980, defendant was arrested in Normal, Illinois. No complaints or charges were filed against him for any criminal activity in Illinois. The State filed a complaint in extradition on March 24, 1980, requesting commitment of the defendant to allow Florida authorities to obtain a governor's warrant for extradition.

On May 5, 1980, a demand from the Governor of Florida for the return of Frederick Leroy Cheek, Jr., a/k/a Mike Asbell, to Florida was filed, together with a governor's warrant from Illinois. The indictment and a judgment of conviction attached to the complaint for extradition bore only the name of Frederick Leroy Cheek, Jr., and indicated that the individual had been found guilty of burglary and sentenced to 15 years' imprisonment. A fugitive warrant from Florida was issued on the basis that Frederick Leroy Cheek, Jr., had escaped from the Florida Department of Corrections. Illinois arrest records listed defendant's name as Mike Asbell, a/k/a William Ballard.

At the hearing on the *habeas corpus* petition, defendant testified that he was passing through Illinois on his way from Dania, Florida, to Chicago when arrested by police in Normal. Defendant was never told why he was arrested, and no complaints or charges were filed against him for any criminal activity in Illinois.

Defendant further testified that he had never used the alias Frederick Leroy Cheek, Jr. He denied that he had been convicted of burglary and sentenced to 15 years' imprisonment in Florida. He denied that he was the escapee from the Florida correctional institution. He stated that his given name at birth was Michael Asbell.

Defendant asserted that he was living in California on the date of Cheek's original conviction. Defendant admitted that he was living in Florida on the date Cheek escaped from the Florida penitentiary.

Since his arrest, defendant claimed he had been fingerprinted a total of 14 times. Defendant was told by correctional officers that duplicate sets of his fingerprints were needed because his first set of prints had not been verified.

Detective Charles Crowe, a 13-year veteran of the Bloomington Police Department, testified that he had been a detective for eight or nine years. He received fingerprint training in 1974. Crowe had a total of 80 hours training from the University of Illinois Police Training Institute in the classification and identification of fingerprints. Crowe was a certified latent print examiner for the past two years. No test was required to receive certification. Crowe estimated that he had compared latent prints

with known prints 150 times. He had been qualified as an expert for purposes of court testimony on three prior occasions. Crowe examined photostatic copies of fingerprint cards before but had never testified as an expert based on a photostatic comparison examination.

Crowe testified that fingerprints are specific to each person and that he had never encountered a situation where two individuals had the same fingerprints. Identification is based on points of similarity or dissimilarity between the prints. If there is any dissimilarity, identity is not established. There is no standard number of points of similarity generally accepted as establishing an identification of a latent print. The FBI uses a 12-point test. Crowe uses a 10-point standard because that is the one relied upon by the Pekin Crime Laboratory, a facility of the Illinois Bureau of Investigation.

Crowe testified that he had examined a fingerprint card which had previously been identified by Officer Randy Scott as having been taken from the defendant on March 16, 1980, following his arrest in Normal, Illinois. Crowe compared the card to a photostatic copy of the fingerprint card for Frederick Leroy Cheek, Jr., provided by the Florida authorities and attached to the Governor's warrant. He examined the prints for 15 minutes.

Crowe compared the right thumbprints of each exhibit. He found 10 points of comparison and no points of dissimilarity. Crowe used the right thumbprint to make the comparison because the remainder of the prints on the photostatic exhibit from Florida were blurred and smudged. Crowe's comparison of the fingerprints was limited to the top left portion of the right thumbprint because even a portion of that print was blurred on the photostatic copy of the Florida prints. While the print was not "the clearest in the world," Crowe stated that it was possible to make an identification. He indicated that he had made successful comparisons of blurred prints in the past. Crowe's opinion, based on his training, experience and examination, was that the thumbprints belonged to the same individual.

Bradley Murphy, as Assistant State's Attorney, was called on behalf of the defendant and testified that he had tried to persuade Florida authorities to send a witness to identify the defendant. Florida refused to send a witness after the *habeas corpus* hearing had been rescheduled. Murphy stated that he had not received effective cooperation from Florida in attempting to extradite the defendant. Murphy also admitted that he had not received any confirmation that Florida would send anyone to retrieve the defendant if he was extradited.

At the close of the hearing, the trial court granted defendant's petition for *habeas* discharge. The State has appealed that ruling.

■■ The purpose of extradition proceedings is the return of a fugitive to the place of the alleged offense. The accused has the right to a writ of

*habeas corpus* to determine if he is charged with a crime and is actually the fugitive from the demanding State. The scope of inquiry, however, is limited specifically to these considerations. (*People ex rel. Hackler v. Lohman* (1959), 17 Ill. 2d 78, 160 N.E.2d 792.) A governor's warrant which is regular on its face presents a *prima facie* case which, while not conclusive, is sufficient and will result in a denial of *habeas* discharge unless evidence sufficient to rebut the presumption is presented. (*Lohman.*) The presumption establishes *prima facie* validity to the issue of identity and the plaintiff has the burden to show that he is not the person whose extradition is demanded. If, however, there is no identity of names, no presumption arises. *Newman v. Elrod* (1979), 72 Ill. App. 3d 616, 391 N.E.2d 37.

■■■ Names are not identical, for purposes of extradition proceedings, when the governor's warrant or the demand contains a name or an alias different from that which appears on the face of the indictment or affidavit which constitutes the foundation for the requisition. Where, as here, there is not an identity of names between the individual sought by the governor's warrant and the individual being held in the asylum State, the burden shifts to the State to prove the defendant's identity. (*People ex rel. Maypole v. Meyering* (1934), 358 Ill. 589, 193 N.E. 495.) When defendant was arrested in Illinois, his name was recorded as Mike Asbell, a/k/a William Ballard. The demand from Florida and the Illinois governor's warrant requested extradition of Frederick Leroy Cheek, Jr., a/k/a Mike Asbell. However, the Florida information, judgment, *mittimus*, and fingerprint record, all of which were executed at the time Cheek was tried and convicted, bear only the notation of "State of Florida v. Frederick Leroy Cheek, Jr."

In *Maypole*, which is factually similar to this case, the supreme court held that neither governor had the authority to insert in the requisition or the warrant any name or alias other than those which appeared on the face of the indictment or affidavit which constituted the foundation for the requisition. The effect of the error or unauthorized act was to shift the burden of proof to the State as to identity.

The only admissible evidence presented on behalf of the State was the fingerprint examination testimony of Detective Crowe. Crowe admitted that the Florida fingerprint specimen from which he worked was badly smudged. Moreover, the only fingerprint which he was able to distinguish was also badly smudged to the extent that the officer could only examine a small portion of the actual print. In addition, Crowe admitted that he had never previously testified as an expert on the basis of his examinations of known prints with photostatic copies.

In granting the defendant *habeas* discharge, the trial court underscored the factors which led to the conclusion that the evidence was not

sufficiently reliable. The officer never directly testified that he was absolutely unable to identify any of the other smudged fingerprints from the Florida print card. Only 10 minutes were taken on the day prior to the hearing to make the examination. Finally, the flaws in the identification were due to human error in photocopying defendant's prints, rather than a lack of tangible prints from which the officer could make an identification.

■■ Under the circumstances, we conclude that the trial court's determination in favor of the defendant was not contrary to the manifest weight of the evidence. The State was under the burden to prove defendant's identity. The evidence of identity was fragile at best and not of a kind that would have been admissible in a proceeding other than an extradition hearing. Authentication of the fingerprints sent from Florida was only by affidavit. Upon this record, we cannot say that the trial court erred in discharging defendant.

The State argues, however, that the trial court may not weigh the evidence or discharge the defendant when the evidence on the issue of his identity is merely contradictory. We find that the case cited by the State in support of that proposition is distinguishable. *People ex rel. Blassick v. Callahan* (1972), 50 Ill. 2d 330, 279 N.E.2d 1, applies to the situation in which the burden is upon the *defendant* to prove either that he is not the person sought by the extradition warrant or that he was not in the demanding State on the date of the offense. In those cases, the State had already presented a *prima facie* case merely on the basis of a governor's warrant, regular on its face, bearing an identity of names. Defendant's protestations of nonidentity were not sufficient to rebut the *prima facie* case.

In this case, the burden was upon the State to establish identity. We conclude that the trial court could weigh the evidence to determine if the State sufficiently met that burden. On this record, we cannot say that the trial court erred in its conclusion.

The State also raises evidentiary questions concerning the trial court's exclusion of an unauthenticated "rap sheet" from the FBI for Frederick Leroy Cheek, Jr., and an unauthenticated photograph, from Florida officials, purportedly of Frederick Leroy Cheek, Jr. The exhibits were excluded because they lacked authentication.

■■ The record contains no testimony which linked the FBI rap sheet with the fingerprints of the defendant. No officer could testify that the fingerprint card from McLean County, which was placed into evidence, was the fingerprint card which was submitted to the FBI computer for identification. The State failed to show any direct link between the "rap sheet" and defendant's fingerprints; the evidence was properly excluded.

The State also argues that the trial court should have admitted the

photograph which bore the name of Frederick Leroy Cheek, Jr., and an identification number on the reverse side. The State argued that this photograph was sent to Illinois as a result of inquiries to Florida Department of Corrections personnel. The photograph, however, was not authenticated.

■■ Although the requirements for authentication of physical objects and documents are relaxed in extradition proceedings, the trial court did not abuse its discretion in refusing to receive these foregoing exhibits.

The State also asserts that this court should assess costs against defendant. Defendant argues that there is no statutory authority for the assessment of costs by this court. In its reply brief, the State relies upon section 8 of "An Act concerning fees and salaries * * * " (Ill. Rev. Stat. 1979, ch. 53, par. 8), which states that State's Attorneys are entitled to a fee of $25 for each day actually employed in the hearing of a case of *habeas corpus* in which the People are interested.

■■ The statute, however, only applies to costs generated at the trial level. In this case, the State did not request that the trial court impose costs on the defendant below. During oral argument, the State conceded that its original boilerplate language in its prayer for relief concerning the issue of costs was intended to apply solely to costs generated by the appeal. The State also conceded that since this is a State appeal, no costs have been assessed against the State which are recompensable here.

The judgment of the circuit court of McLean County granting defendant *habeas corpus* discharge is affirmed.

Affirmed.

CRAVEN, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, dissenting:

The majority opinion abandons the rule which has been established and followed in the opinions of the supreme court. For such reasons I would reverse the trial court and remand for further proceedings.

In *People ex rel. James v. Lynch* (1959), 16 Ill. 2d 380, 158 N.E.2d 60, petitioner alleged that he was not the person named in the indictment in a foreign State and that he had not been in that State on the date of the offense. The opinion determined that the burden of proof was on the petitioner to show that he was not the person named in the indictment, and that he was not in the demanding State at the appropriate time. In *People ex rel. Webb v. Babb* (1954), 5 Ill. 2d 35, 123 N.E.2d 822, the petitioner presented testimony through a number of witnesses that he was not in the demanding State on the date of the crime. The victim of the

offense identified petitioner. The court stated that the issue was what degree of proof was required and announced the rule that discharge may be granted.

> "[O]nly when it is so conclusively proved that no question can be made that the person was not within the demanding State when the crime is said to have been committed can he be discharged. Thus the court *may not weigh the evidence*, or *discharge the petitioner* when the evidence on the fact of his presence in or absence from the demanding State *is merely contradictory*. [Citations.]" (Emphasis added.) 5 Ill. 2d 35, 41, 123 N.E.2d 822, 825.

In *People ex rel. Garner v. Clutts* (1960), 20 Ill. 2d 447, 170 N.E.2d 538, petitioner introduced extensive testimonial and documentary evidence that he was not in the demanding State on the necessary date. The rebuttal evidence presented by the State was largely impeached. The court ruled that the trial court was not at liberty to weigh the contradictory evidence. *People ex rel. O'Mara v. Ogilvie* (1966), 35 Ill. 2d 287, 220 N.E.2d 172, reiterates that a court may not discharge a petitioner in *habeas corpus* when evidence of petitioner's presence in the demanding State is merely contradictory.

*People ex rel. Maypole v. Meyering* (1934), 358 Ill. 589, 193 N.E. 495, has been cited as holding that when there is an absence of identity of names, the burden of proof shifts to the State to prove the identity of petitioner. In *Maypole*, petitioner testified and denied that he was the person named. The court's statement of a shift of burden of proof was made in the factual context that there was no rebuttal evidence presented by the State, no cross-examination and no impeachment of the petitioner's testimony. As noted in *In re Extradition of Leonard* (1975), 27 Ill. App. 3d 870, 327 N.E.2d 480, in *Maypole*, there was a complete lack of a showing of identity.

Here, in granting the writ, the trial court stated:

> "[I] think the defendant in this case has sustained his burden. I find the evidence insufficient to establish to overcome what he has established with reference that he isn't this individual. There may be much evidence to show that he is the same person, however, the Court has been presented with it [*sic*] to contradict it."

It is apparent that there was competent evidence of identity established from the testimony of a qualified fingerprint expert, and that the trial court was weighing the evidence. The trial court erroneously weighed the contradictory evidence presented, and the order discharging the petitioner should be reversed.