Bellacosa, J.
(concurring). While I agree that under governing extradition principles the court has no choice but to affirm the denial of habeas corpus relief, I write separately with respect to a troubling aspect of the case: assurances, referred to in the Appellate Division memorandum adopted as the decision of this court, made by Mississippi officials to Governor Cuomo prior to his ordering the extradition of Jarvious Cotton.
Mr. Cotton, a young black man, was indicted in 1982 by a Grand Jury in Natchez, Mississippi, as an accessory to the slaying of the son of a prominent white banker in that community and was charged with capital murder, an offense for which the death penalty may be imposed. While awaiting trial, Cotton escaped and was ultimately arrested in Brooklyn, New York, in March 1987. Thereafter, Governor Allain of Mississippi submitted requisition papers to Governor Cuomo demanding Cotton’s extradition as a fugitive.
Governor Cuomo ultimately complied with this demand on May 28, 1987. However, prior to that time, petitioner, on behalf of Cotton, submitted the following documents to the Governor: (1) affidavits alleging that, prior to Cotton’s escape, Mississippi officials had mistreated him and violated his civil rights by brutally beating him; (2) an affidavit from Cotton’s attorney in Mississippi stating that as a result of his representation of Cotton, he had been threatened with death and had withdrawn from representing him; and (3) numerous letters from political, business and religious leaders in Natchez and southwestern Mississippi stating that Cotton will not receive a fair trial if returned to Natchez because of adverse pretrial publicity. In response to these submissions, Governor Cuomo, through his own counsel’s office, requested and received apparently oral assurances from Alonzo Sturgeon, the Mississippi *884 District Attorney prosecuting Cotton’s case, that Cotton would not suffer constitutional deprivations if extradited. In a letter to Governor Allain, made public the day Cotton’s extradition was ordered, Governor Cuomo stated he had been assured that: "if Mr. Cotton is unable to afford counsel a highly competent defense attorney would be appointed to represent him, that the District Attorney is agreeable to a change in the venue of the trial, that any needed protection would be afforded to Mr. Cotton and his family and that all other necessary steps would be taken to assure that Mr. Cotton receives a fair trial with full benefit of due process protections” (Appellant’s Appendix, at A-161 [emphasis added]).
The assurances secured by Governor Cuomo, representing an "extra mile” beyond what might be ordinarily required :in the extradition context, were, of course, helpful to him in the exercise of his responsibility. However, they, of course, do not relate directly to the central issue of this case as it has evolved in this habeas corpus procedural setting: whether, as a matter of due process, Cotton was entitled to notice and a hearing on the issue of fugitivity prior to the time Governor Cuomo ordered his extradition. In view of the factual affidavits submitted in this case, the determination whether Cotton is a fugitive who must be extradited pursuant to US Constitution article IV (§ 2, cl 2), or a nonfugitive entitled to an exercise of the Governor’s discretion (see, CPL 570.14), has unique importance for Cotton’s life and liberty interests and directly implicates New York’s interest, as the asylum State, in protecting individuals within its borders against illegal action in the demanding State (see, Appleyard v Massachusetts, 203 US 222, 228; cf., People ex rel. Little v Ciuros, 44 NY2d 825, 827; see generally, Comment, Rendition: The Governor’s Discretion, 2 Lincoln L Rev 48, 61 [1966]). This distinction takes on critical importance because after the Governor of the asylum State signs an extradition warrant alleging that the person sought to be extradited was in the demanding State at the time he allegedly committed the crime with which he is charged and then fled, that allegation of fugitivity is legally presumed and can only be rebutted by conclusive evidence in a habeas corpus proceeding (see, People ex rel. Higley v Millspaw, 281 NY 441, 445; People ex rel. Glidden v Nemier, 133 AD2d 487, 488, Iv denied 70 NY2d 612; People ex rel. Friedman v Commissioner of N. Y. City Dept. of Correction, 66 AD2d 689, 690; see also, South Carolina v Bailey, 289 US 412, 421-422 [evidence "beyond reasonable doubt”]). For *885 these reasons, I would hold that where a person sought to be extradited has submitted factual affidavits reflecting clear evidence that if returned to the demanding State his constitutional rights will continue to be violated, due process should require that the Governor provide him with notice and opportunity to be heard on the issue of whether he is a fugitive prior to ordering extradition (see, NY Const, art I, § 6; see also, People v Millan, 69 NY2d 514; cf., People ex rel. Little v Ciuros, 44 NY2d 825, supra).
Petitioner contends that because he fled from Mississippi out of fear for his life, he left the demanding State involuntarily within the meaning of CPL 570.14 and is not a fugitive from justice. Accordingly, he concludes that his extradition is not constitutionally mandated, but rather vested in the discretion of the Governor. This argument is unsupported by the legislative history of Uniform Criminal Extradition Act § 5 (adopted verbatim in CPL 570.14), which establishes that this provision was enacted to provide the Governor with discretion only with respect to individuals who left a demanding State under compulsory process (see, Uniform Criminal Extradition Act, Commissioners’ Prefatory Note, 11 ULA 54 [Master ed]; Uniform Criminal Extradition Act § 5, Commissioners’ Note, 11 ULA 160 [Master ed]). In accordance with this legislative history, CPL 570.14 has been applied in New York only when the demanding State seeks the extradition of a person involuntarily transferred to this State (see, People ex rel. Richardson v McMickens, 115 AD2d 786; People ex rel. Ingram v Bound, 58 AD2d 961, Iv denied 42 NY2d 811; People ex rel. Davis v Quinlan, 69 Misc 2d 708).. Given the state of the law with respect to CPL 570.14 and Cotton’s admissions with respect to his physical presence in the demanding State, the opportunity from Governor Cuomo to make written submissions through his counsel’s office on the issue of fugitivity provided Cotton with minimal, but sufficient, due process (see, Mathews v Eldridge, 424 US 319, 335; see also, People v Hinton, 40 NY2d 345, 350). Because, on my view of this record, Cotton received all the process he was due in this opportunity afforded by Governor Cuomo, I am compelled to join in the affirmance of the order denying Cotton habeas corpus relief.
Despite concluding that Cotton must be extradited, I must express my skepticism about the reliability of the assurances given to Governor Cuomo by Mississippi officials. My doubt stems from the reported statements of Alonzo Sturgeon, the *886 District Attorney of Adams County, Mississippi, who is prosecuting Cotton’s case, and of Governor Allain’s legal advisor, Carmen Castilla. One day after Governor Cuomo signed the warrant ordering Cotton’s extradition, a UPI dispatch, dated May 29, 1987, reported the following:
"Carmen Castilla, Allain’s legal advisor, said Cuomo agreed to the extradition after making several inquiries into the way Mississippi law worked, especially as regards the death penalty. But she stressed that Allain made no guarantees concerning the handling of Cotton’s case.
" 'We cannot give any assurances,’ she said.
"Sturgeon made only one concession to Cuomo — he will not object to any request by Cotton’s lawyers that the trial be moved out of Natchez.
" 'Normally, I would object to a change of venue,’ he said. 'But I certainly stand by what I told him (Cuomo).’
"But as for assurances of a 'highly competent’ lawyer and a fair trial, Sturgeon said those are already guaranteed to Cotton under state law. He added that all lawyers qualified to practice law in Mississippi are competent” (UPI dispatch available on lexis, Nexis library, Omni file, Search term: Jarvious Cotton [emphasis added]; compare that to letter from Governor Cuomo to Governor Allain [May 28, 1987], quoted and emphasized, supra, at 884).
This news report suggests a significant retreat from and contradiction of the assurances given to Governor Cuomo and made public by him in connection with his decision to extradite. Additionally, Mr. Cotton’s mother has also been prosecuted as an accessory after the fact of murder in the aid of the escape of her son (see, UPI dispatch [July 29, 1987], lexis, Nexis library, Omni file, Search term: Jarvious Cotton). In my view, it is appropriate to take judicial notice of public developments of this sort relating to a matter expressly part of the record and of the Appellate Division memorandum decision adopted by this court as its reasoning as well, which matters are available and known through modern research techniques.
These developments represent to me an apparently guileful affront by Mississippi officials to our State’s highest executive official and to the interests of this State in protecting the rights of persons entitled to the benefits of the New York and United States Constitutions. Coincidentally, this ploy occurred at about the same time as a recent decision of Mississippi’s highest judicial body manifesting its not dissimilar lack of *887 respect for the ruling of a sister State’s highest court (see, Johnson v State, 511 So 2d 1333, at 1338 [Miss], and dissenting opn, at 1343-1345, cert granted — US —, 108 S Ct 693, affecting People v Johnson, 69 NY2d 339, vacating a New York felony conviction used as an aggravating predicate factor for imposition of the Mississippi death penalty). The issue now before the United States Supreme Court in that case is the failure of the Mississippi Supreme Court in a death penalty case to provide full faith and credit to the judgment of New York’s highest court in People v Johnson (69 NY2d 339, supra).
While I have no choice in law but to concur in the decision to allow this extradition to take place, I am likewise compelled to express my disquiet and to not allow these matters to pass unnoticed.
Order affirmed, etc.